UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

T.M. and J.M., on behalf of T.D.M.,

                Plaintiffs,

  -v-                                              1:11-CV-605

KINGSTON CITY SCHOOL DISTRICT,

                Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                                 OF COUNSEL:

SUSSMAN & WATKINS                 MICHAEL H. SUSSMAN, ESQ.
Attorneys for Plaintiffs
55 Main Street, Suite 6
P.O. Box 1005
Goshen, NY  10924

SHAW & PERELSON, LLP              MARK C. RUSHFIELD, ESQ.
Attorneys for Defendant
21 Van Wagner Road
Poughkeepsie, NY  12603

DAVID N. HURD
United States District Judge

## MEMORANDUM–DECISION and ORDER

### I. INTRODUCTION

      On May 31, 2011, plaintiffs T.M. and J.M. filed this action against defendant Kingston City School District ("defendant" or "the District") alleging failure to provide their son, T.D.M., with a free appropriate public education ("FAPE") in violation of the Individuals with Disabilities in Education Act, 20 U.S.C. §§ 1400–1491o (2006) ("IDEA").  Plaintiffs seek reimbursement for tuition they paid to have T.D.M. attend Chapel Haven, a private out-of-

state educational facility, for the 2008–09 and 2009–10 school years.  Specifically, plaintiffs challenge the decision of a State Review Officer ("SRO"), who concluded that the District was not required to provide a FAPE because T.D.M. was eligible to graduate in June 2008.

The District answered the complaint on July 13, 2011.  It also asserts two counterclaims, arguing that the complaint must be dismissed because the educational program provided by Chapel Haven was not appropriate for T.D.M.'s unique needs and equitable considerations weigh against awarding tuition reimbursement.

Plaintiffs have moved for summary judgment pursuant to Federal Rule of Civil Procedure 56.  Defendant opposes and has filed a cross-motion for summary judgment.  The motions have been fully briefed and were considered on submit.

## II. FACTUAL BACKGROUND

Unless otherwise noted, the following facts are undisputed.  T.D.M., born in September 1989, is diagnosed with Pervasive Development Disorder and educationally classified as autistic.  He received academic and social skills instruction through the Autistic Strength Purpose and Independence in Education ("ASPIE") program at the Onteora Central School District during the 2004–05 and 2005–06 school years.[1]  He was placed in the ASPIE program on the recommendation of the District's Committee on Special Education ("CSE").  The ASPIE program terminated after the 2005–06 school year.  Plaintiffs unilaterally placed T.D.M. in the Ridge School, a private school in Hyde Park, New York, for the 2006–07 and 2007–08 school years.[2]  The District financially supported this placement.

---

[1] These represented T.D.M.'s ninth and tenth grades, respectively.

[2] These represented T.D.M.'s eleventh and twelfth grades, respectively.

In April or May 2008, plaintiffs formally notified the District that they intended to unilaterally place T.D.M. in Chapel Haven, a private residential school in Connecticut.[3] On May 19, 2008, plaintiffs signed a contract with Chapel Haven enrolling their son for the 2008–09 and 2009–10 school years.

The disputed facts begin in June 2008. Specifically, the parties dispute who possessed or had access to T.D.M.'s official academic transcripts at the end of the 2007–08 school year. Plaintiffs allege that defendant failed to provide them with an official District transcript despite multiple requests and that the District did not obtain a proper transcript from the ASPIE program. Defendant claims that the records from ASPIE, although not officially sealed, accurately reflected T.D.M.'s academic history in the program. Defendant also argues that plaintiffs repeatedly refused to turn over T.D.M.'s transcript from the Ridge School, thereby hindering the District's ability to properly determine T.D.M.'s graduation status.[4]

The District's Director of Special Education, Beth Lewis-Jackson ("Lewis-Jackson"), sent a letter to J.M. on June 18, 2008, acknowledging J.M.'s request for a District transcript and asking for assistance in obtaining T.D.M.'s Ridge School transcript. On June 25, 2008, the CSE met with J.M. and, by phone, the director of the Ridge School to discuss T.D.M.'s educational progress and needs. Defendant maintains that the CSE concluded T.D.M. was

---

[3] A "Parent Nonpublic School Placement Acknowledgment/Consent Form" indicating plaintiffs' intent to enroll their son at Chapel Haven is dated April 1, 2008, but stamped "RECEIVED" by the District on May 28, 2008. State Review Officer R., Dkt. No. 27, District Ex. 12. (As the SRO Record is not paginated, citations to it will be made by referencing the specific exhibits or transcripts.)

[4] The District did not obtain a copy of T.D.M.'s Ridge School transcript until March 2010. During the administrative hearing, J.M.—T.D.M.'s mother—testified that she received the official Ridge School transcript in the spring of 2008 but did not provide a copy to the District because the District refused to give her an official District transcript. She described this as "tit for tat basically." State Review Officer R., J.M.'s Hr'g Tr., 211:24.

- 3 -

ready to graduate pending a review of his academic transcripts to confirm same. The District requested a transcript from the Ridge School at the meeting. Plaintiffs deny that the CSE conclusively determined T.D.M.'s graduation status at this meeting and assert that the District did not have the necessary academic records from ASPIE or the Ridge School to make such a determination at that time. The District did not prepare an Individualized Educational Program ("IEP") or recommend any alternative placement for T.D.M. for the 2008–09 and 2009–10 school years—during which he attended Chapel Haven. T.D.M. was never formally awarded a diploma from the District.

Lewis-Jackson sent written requests for T.D.M.'s Ridge School transcript to the director of the Ridge School on August 1 and September 11, 2008. On March 13, 2009, the District's Assistant Director of Special Education sent a letter to J.M. noting that the District had not received a Ridge School transcript despite repeated requests. This letter also inquired as to whether T.D.M. had been striving for a Regents or local diploma. On November 20, 2009, Lewis-Jackson sent a letter to the New York State Office of Vocational and Educational Services requesting assistance in the District's attempt to secure a transcript from the Ridge School. This letter noted that in June 2008 the director of the Ridge School had advised that T.D.M. accrued enough credits for a high school diploma, but the Ridge School would not provide a transcript because the parents had not paid the full tuition.

In December 2009, plaintiffs filed a timely due process complaint with the District alleging that it failed to provide a FAPE and refused to provide T.D.M.'s student records. Plaintiffs requested an impartial hearing and sought reimbursement for the tuition paid to Chapel Haven for the 2008–09 and 2009–10 school years. Plaintiffs also sought T.D.M.'s official District records.

In March 2010 a two-day hearing was conducted by an Impartial Hearing Officer ("IHO"). During the hearing, Lewis-Jackson and the principal of Kingston High School, Marie Anderson ("Anderson"), reviewed T.D.M.'s transcripts.[5] Both concluded that he had earned enough credits for a Regents diploma by June 2008. Anderson specifically testified that twenty-two credits are required for a Regents diploma, and T.D.M. had earned twenty-three by June 2008. She further noted T.D.M. had passed four Regents exams, which was sufficient for a Regents diploma.

In a written decision dated November 12, 2010, the IHO determined that T.D.M. did not actually graduate prior to the 2008–09 school year, the District failed to provide him with a FAPE, and Chapel Haven met his educational needs. The IHO further concluded that equitable considerations supported an award of full reimbursement for the two years he attended Chapel Haven because plaintiffs cooperated with the CSE and provided adequate notice of their intent to place T.D.M. in Chapel Haven.

The District appealed the IHO's decision. On February 3, 2011, an SRO issued a decision annulling the IHO's determination. The SRO concluded that the District was not required to provide a FAPE because T.D.M. "did attain graduation status prior to the 2008–09 school year," plaintiffs "significantly interfered" with the District's determination of T.D.M.'s eligibility to graduate by intentionally withholding his Ridge School transcript, and plaintiffs failed to provide notice prior to enrolling their son in Chapel Haven for the 2009–10 school year. State Review Officer R., SRO Decision, 6–9.

---

[5] When the administrative hearing began, all parties possessed the transcripts from the ASPIE program and the Ridge School.

### III. DISCUSSION

In their motion for summary judgment, plaintiffs argue that they are entitled to full reimbursement for tuition paid to Chapel Haven because: (1) T.D.M. did not actually graduate prior to the 2008–09 school year, and the District did not notify plaintiffs that he was eligible to graduate at that time; (2) the District was obligated to provide a FAPE until T.D.M. either received a diploma or reached the age of twenty-one; (3) equitable considerations favor an award of reimbursement; and (4) Chapel Haven provided an appropriate educational setting for T.D.M.

In opposition to plaintiffs' motion, and in support of its cross-motion, the District asserts that: (1) T.D.M. attained graduation status prior to the beginning of the 2008–09 school year, and it was thus not obligated to provide a FAPE thereafter; (2) equitable considerations do not favor tuition reimbursement; (3) plaintiffs did not provide adequate notice of their intent to place T.D.M. in Chapel Haven for the 2009–10 school year; and (4) plaintiffs have not established that Chapel Haven was an appropriate, least-restrictive environment for T.D.M.'s unique educational needs.

#### A. Summary Judgment in IDEA Cases—Legal Standard

Actions brought in federal court pursuant to the IDEA "generally are resolved by examination of the administrative record in a summary judgment procedural posture." J.R. v. Bd. of Educ., 345 F. Supp. 2d 386, 394 (S.D.N.Y. 2004). However, they employ a different legal standard than traditional summary judgment motions because "the existence of a disputed issue of material fact will not defeat the motion." Id. Instead, district courts reviewing administrative decisions under the IDEA must determine whether the decision is supported by "the preponderance of the evidence," taking into account the administrative

record and any further evidence presented by the parties. 20 U.S.C. § 1415(i)(2)(C); Grim v. Rhinebeck Cent. Sch. Dist., 346 F.3d 377, 380 (2d Cir. 2003).  The Supreme Court has explained that the preponderance of the evidence standard "is by no means an invitation to the courts to substitute their own notions of sound educational policy for those of the school authorities which they review." Bd. of Educ. v. Rowley, 458 U.S. 176, 206, 102 S. Ct. 3034, 3051 (1982).

Accordingly, an SRO's decision that "is reasoned and supported by the record" should not be disturbed.  Gagliardo v. Arlington Cent. Sch. Dist., 489 F.3d 105, 114 (2d Cir. 2007).[6] A district court must give "due weight" and grant "substantial deference" to the findings of a state administrative body on issues of educational policy, especially where the court's analysis is based solely on the same evidence in the administrative record.  See Cerra v. Pawling Cent. Sch. Dist., 427 F.3d 186, 191 (2d Cir. 2005); Grim, 346 F.3d at 381; M.S. ex rel. S.S. v. Bd. of Educ., 231 F.3d 96, 105 (2d Cir. 2000), abrogated on other grounds by Schaffer ex rel. Schaffer v. Weast, 546 U.S. 49, 126 S. Ct. 528 (2005).  However, factual findings that are unsupported or controverted by the record may be rejected.  Weaver v. Millbrook Cent. Sch. Dist., 812 F. Supp. 2d 514, 521 (S.D.N.Y 2011) (internal quotation marks omitted).  Moreover, the "due weight" that must ordinarily be given to the findings of an administrative body is not implicated where the body's decision concerns an issue of law instead of an issue of educational policy.  Mrs. B. v. Milford Bd. of Educ., 103 F.3d 1114, 1122 (2d Cir. 1997).

---

[6] Where, as here, the SRO's determination conflicts with the earlier decision by the IHO, "the earlier decision may be afforded diminished weight." Id. at 114 n.2.

### B. Eligibility for a FAPE after June 2008

Plaintiffs challenge the SRO's conclusion that the District did not owe T.D.M. a FAPE after June 2008.

In New York, "[a] person over five and under twenty-one years of age who has not received a high school diploma is entitled to attend the public schools maintained in the district in which such person resides without the payment of tuition." N.Y. EDUC. LAW § 3202(1). Moreover, "[e]arning a Regents or local high school diploma shall be deemed to be equivalent to receipt of a high school diploma pursuant to Education Law, section 3202(1) and shall terminate a student's entitlement to a free public education." N.Y. COMP. CODES R. & REGS. tit. 8, § 100.5(b)(7)(iii).

It is undisputed that T.D.M. did not actually <u>receive</u> a Regents or local high school diploma after the 2007–08 school year. However, the preponderance of the evidence in the administrative record supports the SRO's determination that T.D.M. <u>earned</u> a Regents diploma by June 2008, thereby ending the District's obligation to provide a FAPE. At the administrative hearing Lewis-Jackson and Anderson both reviewed T.D.M.'s transcripts and testified that he was eligible to graduate with a Regents diploma in June 2008.[7] Anderson specifically noted that twenty-two credits are required for a Regents diploma, and T.D.M. had earned twenty-three by the end of the 2007–08 school year. She further noted that T.D.M. had passed enough Regents exams to graduate. He therefore earned a Regents diploma.

---

[7] Plaintiffs question the accuracy of the ASPIE transcript because it did not bear an official seal. However, in an August 15, 2008, letter written by J.M. and in their request for an impartial hearing, plaintiffs complained about the District's refusal to accept the credits T.D.M. earned in the ASPIE program. The implication that the District somehow erred in subsequently accepting the ASPIE credits in its evaluation of T.D.M.'s graduation status is therefore unpersuasive. Moreover, the SRO upheld the District's determination that the academic records indicate T.D.M. had earned sufficient credits to graduate by June 2008. As explained above, this determination is entitled to deference.

See State Review Officer R., District Ex. 32.

As noted above, New York law specifically dictates that "earning" a Regents diploma is "equivalent to receipt of a high school diploma," which terminates a student's entitlement to further free public education. See N.Y. EDUC. LAW § 3202(1); N.Y. COMP. CODES R. & REGS. tit. 8, § 100.5(b)(7)(iii). Therefore, T.D.M. was no longer entitled to a free public education after June 2008, and plaintiffs are not entitled to tuition reimbursement for his residential placement in subsequent school years.[8]

Accordingly, plaintiffs' motion for summary judgment will be denied, and defendant's cross-motion will be granted.

### C. Equitable Considerations

Moreover, equitable considerations weigh heavily against awarding plaintiffs any tuition reimbursement. A court may order reimbursement to the parents of expenses incurred in placing their child in a private school if the parents show that the school district failed to provide a FAPE and the private school met the child's needs. Walczak v. Fla. Union Free Sch. Dist., 142 F.3d 119, 129 (2d Cir. 1998). However, even if the parents make such a showing, a district court may nonetheless reduce or deny reimbursement in light of equitable considerations, such as "unreasonable" action on the part of the parents. 20 U.S.C. § 1412(a)(10)(C)(iii); Frank G. v. Bd. of Educ., 459 F.3d 356, 363–64 (2d Cir. 2006) (noting that equitable considerations relating to the parents' conduct are relevant "because the authority to grant reimbursement is discretionary").

---

[8] In light of this determination, it is unnecessary to consider whether plaintiffs provided the District with adequate notice of their intent to place T.D.M. in Chapel Haven or whether Chapel Haven was an appropriate, least-restrictive environment for his unique educational needs.

Plaintiffs obtained an official copy of T.D.M.'s Ridge School transcript in the spring of 2008. They unilaterally placed T.D.M. in Chapel Haven—and signed a two-year contract with the private school—before the CSE even met in June 2008 to discuss T.D.M.'s educational progress and further needs. T.D.M.'s graduation eligibility was discussed at the CSE meeting but not finally decided because the District did not have all of the necessary academic records. In her August 15, 2008, letter to Lewis-Jackson, J.M. acknowledged as much by noting: "During the last CSE meeting in June, the District stated that it was going to have a Kingston guidance counselor review the Onteora [ASPIE] transcripts and determine whether [T.D.M.] can graduate." State Review Officer R., Due Process Compl. Notice, 4.

The District repeatedly requested the Ridge School transcript from plaintiffs and the Ridge School director. Despite these numerous documented requests, and a plea to the New York State Office of Vocational and Educational Services for assistance in obtaining the Ridge School transcript, the District was not provided with a copy until March of 2010. J.M. knew that the District had requested the transcript and admitted to intentionally withholding it. This unreasonably prevented the District from making a proper determination as to T.D.M.'s graduation status or developing an updated IEP after the 2007–08 school year. Had the District obtained the transcript in June 2008 when it was first requested, it would have been clear that T.D.M. had earned a Regents diploma—thus ending the District's obligation to provide him with a FAPE.

In short, the administrative record supports, by a preponderance of the evidence, the SRO's conclusion that the plaintiffs significantly interfered with the District's ability to determine whether T.D.M. was eligible to graduate after the 2007–08 school year. Such unreasonable conduct weighs against awarding tuition reimbursement. See M.S. v. Mullica

Twp. Bd. of Educ., 485 F. Supp. 2d 555, 568 (D.N.J. 2007) (denying reimbursement where the parents "refused to cooperate with the [school district] to such an extent that the [school district] was unreasonably prevented from creating an IEP"), aff'd, 263 F. App'x 264 (3d Cir. 2008).

## IV. CONCLUSION

The SRO's determination that T.D.M. had earned a Regent's diploma by June 2008 is supported by a preponderance of the evidence in the administrative record. The SRO's decision is thus entitled to substantial deference and will not be disturbed. T.D.M. earned a Regent's diploma by the end of the 2007–08 school year, therefore ending the District's obligation to provide him with further free public education. Plaintiffs are not entitled to tuition reimbursement for the 2008–09 and 2009–10 school years.

Therefore, it is

ORDERED that

1. Plaintiffs' motion for summary judgment (Dkt. No. 11) is DENIED;

2. Defendant's cross-motion for summary judgment (Dkt. No. 15) is GRANTED; and

3. The complaint is DISMISSED in its entirety.

IT IS SO ORDERED.

The Clerk of the Court is directed to enter judgment accordingly.

Dated: September 18, 2012
       Utica, New York.

United States District Judge